United States District Court
Southern District of Texas

**ENTERED**

July 22, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC LYNDELL MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-04541 |
| | § | |
| CHRISTOPHER M. LOPEZ, | § | |
| | § | |
| Defendant. | § | |

## ORDER

The Court has before it the Motion to Dismiss filed by Defendant Christopher M. Lopez ("Judge Lopez" or "Defendant"). (Doc. No. 13). Despite the fact that the Motion has been pending for months, the Plaintiff, Eric Lyndell Moore, has not filed a response in opposition.

## I.

Plaintiff is a litigant in a bankruptcy case stemming from the Chapter 11 bankruptcy of J.C. Penney and its affiliated entities. *See In re J.C. Penney Company, Inc., et al.*, No. 20-20182 (Bankr. S.D. Tex.). That bankruptcy commenced in 2020 and was presided over by former Bankruptcy Judge David Jones until October of 2023. Most of the core decisions were completed by that time.

In September of 2020, the Bankruptcy Court entered an order approving the sale of substantially all of J.C. Penney's assets. That order and the underlying documents provided the creation of one entity called the Copper Property CTL Pass Through Trust ("Trust"). The buyers of J.C. Penney's assets would transfer assets free and clear to the Trust. Ultimately, the Bankruptcy Court confirmed the Plan in December of 2020. This case was eventually transferred to Judge Christopher Lopez's docket after Judge Jones resigned.

While the Plan was confirmed years ago, the assets that remained were held in the Trust. The Trust is governed by a Trust Agreement which requires it to sell the assets to third parties. The Agreement also requires the Trust to issue a series of certificates to Copper Trust Certificate Holders. While not detailed in the Complaint, Plaintiff alleges that he eventually acquired debt that would, under certain conditions, entitle him to a share of the proceeds of the sale of assets. Plaintiff describes his ownership as "vested property rights in J.C. Penney bonds." (Doc. No. 1 at ¶10).

The conflict between Plaintiff and the other litigants in Bankruptcy Court, and apparently between Plaintiff and Defendant, appeared to begin in mid-2024. In August of 2024, Plaintiff filed two motions regarding the sale of assets and distribution of proceeds, which the other parties opposed. Judge Lopez eventually ruled against Plaintiff. Plaintiff filed a motion for the Court to reconsider but then withdrew that motion. He later filed an adversary proceeding seeking a declaratory judgment as to the Trust and its assets. The Trust filed a motion to dismiss this proceeding claiming that Plaintiff was trying to relitigate issues that were already settled by prior orders that had not been appealed. The Trust eventually filed what it described as an Emergency Motion to Enforce the Court's Order and for Civil Contempt with the goal of trying to stop Plaintiff from relitigating issues that had already become final. The Court apparently ruled against Plaintiff, including on the contempt issue, but did not penalize him for the underlying conduct.

The Trust later filed a second motion for contempt. Plaintiff filed a motion to continue that hearing, but it was denied by Defendant. The hearing was held on September 24, 2025, but, according to the pleadings in this case, the Bankruptcy Court has not ruled on it. On that same day, Plaintiff filed this case in which he primarily seeks declaratory and injunctive relief. (Doc. No. 1). Defendant has filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss, (Doc. No. 8), to which Plaintiff has not filed a response in opposition.

2

## II.
## Controlling Law

### A. No Response in Opposition

Under the Local Rules of the Southern District of Texas, motions to which there is no response in opposition filed are routinely granted. This Court's Local Rules state that "[f]ailure to respond to a motion will be taken as a representation of no opposition." S. Dist. Tex. L.R. 7.4; *see also* Hanen L.R. 7(D). As stated above, Plaintiffs failed to respond to Defendant's motion. Therefore, the local rules would allow the Court to grant Defendant's motion as it should be considered unopposed.

Nevertheless, the Fifth Circuit has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *See Johnson v. Pettiford*, 442 F.3d. 917, 918 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 757 F.2d. 698, 707–09 (5th Cir. 1985)); *Ramsey v. Signal Delivery Serv.*, 631 F.2d. 1210, 1213–14 (5th Cir. 1980)).

Since this Motion is a dispositive motion, the Court will review its merits despite the lack of response.

### B. Rule (12)(b)(1) Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331-32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940

F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff, as the party asserting jurisdiction, bears the burden of proof to defeat a Rule 12(b)(1) motion to dismiss. *Id.*

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560-61). "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.* at 2207.

C. Rule 12(b)(6) Failure to State a Claim

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

4

556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.
### Analysis

In the caption of Plaintiff's Complaint, he sets out that he is suing Judge Lopez in his individual capacity. Later, he also pleads that he is not challenging "the merits of Bankruptcy Court rulings." (Doc. No. 1 at ¶ 5). That being said, all of the conduct about which he complains are actions, rulings, or omissions that Judge Lopez did while acting under color of federal authority as a United States Bankruptcy Judge. While seemingly contradictory statements, the remainder of the allegations make clear that Moore's complaints are directed at actions (or inactions) allegedly taken or not taken by Judge Lopez while handling the underlying bankruptcy case. All concern either substantive or procedural rulings.

The following is Plaintiff's listing of his complaints drawn directly from the Complaint:

a. **Emergency Motion Suppression** – Plaintiff's January 24, 2024 emergency motion [Dkt. 1327, *In re JC. Penney Company, Inc.,* No. 20-20182 (Bankr. S.D. Tex.)] sat unresolved for six months, while Defendants' August 18, 2025 emergency motion [Dkt. 1689, *id.*] was granted within 24 hours.

b. **Denial of Rebuttal** – On September 4, 2024, Defendant promised Plaintiff rebuttal argument but ended the hearing without allowing it.

c. **Denial of Mandatory Judicial Notice** – On July 29, 2024, Defendant denied mandatory judicial notice of SEC filings, contrary to Fed. R. Evid. 201(b)(2) and governing precedent. These SEC records—belonging to clients of powerful law firms—contained evidence that Jackson Walker LLP and allied firms concealed at least $1 billion in estate assets in the J.C. Penney bankruptcy. By refusing mandatory judicial notice, Defendant shielded this concealment from scrutiny even though the SEC documents contained a judicially-determined valuation ordered by the Bankruptcy Court.

d. **Failure to Address Named Defendant** – On September 9, 2024, Defendant failed to rule on claims against Copper Property Trust, a named and represented defendant.

e. **Refusal to Transmit Motions** – In March and April 2025, Defendant refused to transmit Plaintiff's motions to withdraw the reference under 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 50ll(a).

f. **Fabricated Record and Defective Contempt Order** – On August 18, 2025, Copper Property Trust filed an Emergency Motion [Dkt. 1689] seeking to enforce prior orders and to hold Plaintiff in civil contempt (Exhibit A). The motion explicitly noticed a hearing date, yet no hearing was ever conducted. The following day, Defendant Lopez entered a one-line order [Dkt. 1690] granting the motion in full (Exhibit B). That order recited the existence of "responses" and "arguments of counsel" that never occurred, identified no violated directive, made no findings of fact, and provided no guidance as to what Plaintiff could do to purge the alleged contempt. The only "direction" Plaintiff received came from opposing counsel, who threatened that he should abandon his pursuit of Article III review. On September 8, 2025, Copper Property Trust filed a subsequent motion [Dkt. 1693], seeking to leverage the defective contempt finding into a monetary award of $750,000 plus ongoing daily sanctions of $5,000 (Exhibit C). Plaintiff thus faces extraordinary financial exposure, even though he has never been told what orders he violated or how to cure them.

6

g. **Denial of Right to Counsel** – On September 23, 2025, Defendant denied Plaintiff's request for time to obtain counsel in contempt proceedings, in violation of due process requirements [Dkt. 1707] (Exhibit D).

(Doc. No. 1 at ¶ 12).

While these allegations do not represent the totality of Moore's pleading concerning the underlying facts and issues, the remainder are basically in the same vein. They are all complaints about a ruling, an order, the manner in which some proceeding was scheduled, or situations when a ruling was made (or not made).[1]

This Court finds that Moore's contentions need additional context. First, he portrays his Complaint as one brought under the auspices of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Second, while he seeks "nominal and compensatory damages, including for reputational and financial injury caused by the unconstitutional contempt order," his primary emphasis seems to be declaratory and injunctive relief. (Doc. No. 1 at 13–15). He prays that this Court enter a declaration that Judge Lopez's actions violated his Fifth Amendment rights. *Id.* at 13. He then follows this request with a laundry list of actions that he wants this Court to enjoin. *Id.* at 13–15. All of these concern either actions that Judge Lopez has already taken, deadlines that have already passed, or actions Moore is worried might happen in the future.[2] The common denominator is they all concern action or inactions that either have occured or might in the future occur in the underlying bankruptcy case. *See In re J.C. Penney Company, Inc., et al.*, No. 20-20182 (Bankr. S.D. Tex.).

---

[1] As will be discussed below, many, if not all, of these complaints could have been pursued in the underlying lawsuit either by appeal or mandamus.

[2] While Moore complains that Defendant took certain actions wrongfully or without justification, he does not allege that Judge Lopez did not have jurisdiction—no doubt because it is clear that Judge Lopez did have jurisdiction for the case over which he was presiding.

The Court will address the claim for damages first and then address the claims for declaratory and injunctive relief.

A sitting bankruptcy judge is protected by judicial immunity for all actions taken in his or her judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). All of the actions, rulings, or inactions (including the failure to rule, the failure to timely rule, the failure to give a party more time, or allow that party time to argue) about which Moore complains are judicial actions for which Judge Lopez has absolute immunity. *See Laird v. Spencer*, 2025 WL 79826 (5th Cir. Jan. 13, 2025). The test for determining whether an act is considered judicial action has four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces; (3) whether the conduct centered around a pending case; and (4) whether the acts arose out of the judge's official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). In this case, all four factors strongly indicate that the complained-of actions were judicial in nature—especially when one considers that the factors are to be broadly construed in favor of immunity. *Id.* Thus, Judge Lopez is totally immune from any claims for monetary damages.

This ruling, however, does not necessarily resolve Moore's plea for declaratory and injunctive relief. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)). The Fifth Circuit has addressed this very issue with respect to situations in which a litigant has sought declaratory or injunctive relief against a judge. It has held that a plaintiff cannot pursue this relief because of a lack of standing. While the underlying facts in *Laird v. Spencer* differ from the facts alleged here, the guiding legal concepts are the same. Consequently, this Court will quote that decision liberally.

To demonstrate Article III standing,

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

When "seeking injunctive or declaratory relief, a plaintiff must allege facts" evincing "a substantial and continuing controversy between two adverse parties . . . that is real and immediate, and creates a definite, rather than speculative threat of future injury." "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." Rather, "to obtain declaratory or injunctive relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."

Laird seeks equitable relief to remedy Spencer's past violation of the ADA and section 504. She asserts no continuing harm from the alleged violation. Nor does she demonstrate a non-speculative threat of future injury. The complaint states that as a resident of East Baton Rouge Parish, Laird may foreseeably have to appear before . . . Spencer in the future, and this possibility generates significant fear and distress for her due to the discrimination she faced and expects to face in the future if she has to return to . . . Spencer's court.

The complaint goes on to state that "absent injunctive relief, there is a clear risk that Spencer's actions will recur with Laird and/or additional deaf patients or companions [sic]." Such conjecture does not establish the requisite threat of future harm.

We conclude, therefore, that even if absolute judicial immunity does not bar Laird's claims for declaratory and injunctive relief, Laird lacks standing to pursue these remedies. "The danger that excessive superintending of state judicial functions 'would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity' " bolsters our conclusion.

*Laird*, 2025 WL 79826, at *7 (citations omitted).

Moore's claims and the relief he seeks fall under this ruling. Based upon past rulings by the Bankruptcy Court, he is asking this Court to enjoin future rulings.[3] He prays that this Court: 1)

---

[3] Moore also seeks an injunction for a hearing that was to be held on September 24, 2025 (the day this lawsuit was filed). Obviously, that claim is moot.

9

prohibit the entry of future enforcement and/or sanctions; 2) prohibit future contempt orders; and 3) enjoin the underlying court from obstructing or retaliating against him. These are all actions that have not yet happened and may very well never happen. That being the case, under the existing Fifth Circuit precedent, this Court finds Moore does not have standing to pursue this relief.

There is, however, another reason why Moore cannot obtain the extraordinary relief that he seeks. To obtain injunctive relief, one must demonstrate that one has no remedy at law. Here, that is clearly not the case. Stated another way, "injunctive relief is unavailable because McCarrell [in this case, Moore] complains of acts that either were, are, or will be [or could have been] subject to appellate review." *McCarrell v. Davis*, 2017 WL 11221248, at *2 (W.D. Tex. July 31, 2017), *report and recommendation adopted*, 2017 WL 11221249 (W.D. Tex. Aug. 25, 2017). Like McCarrell, Moore could have appealed any of these rulings, filed for a writ of mandamus, or filed a motion to recuse. All of these are permissible legal remedies that were available to Moore and instead he chose to file this lawsuit.

When one seeks a permanent injunction, the "essential prerequisite" is the unavailability of an adequate remedy at law. *Lewis v. S. S. Baune*, 534 F.2d 1115, 1123–24 (5th Cir. 1976); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004). In the instant case, Plaintiff had multiple avenues to pursue. He did not follow any of these avenues for relief and thus cannot prove an essential element of his case.

Finally, there is one additional reason that the Court finds that it must dismiss this suit. A party who is unhappy (whether justifiably or not) with a ruling of a court cannot just file a separate lawsuit in a different court and seek to get that second judge to overturn the prior judge's order. For example, Moore is asking this Court to, among other things, vacate the August 19, 2025 order

10

of Judge Lopez. This procedure is an impermissible collateral attack on the original judge's order.

Courts from the Supreme Court down have illuminated this:

> We have made clear that " 'it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.' " If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal "to the district court for the judicial district in which the bankruptcy judge is serving," and then to the Court of Appeals for the Eleventh Circuit. Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (emphasis added) (citations omitted).

The Fifth Circuit has followed suit. In *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404

F.3d 933 (5th Cir. 2005), the Court held:

> In these extraneous issues, which seemingly arise from Armstrong's perception that the courts have treated him unfairly, Armstrong challenges on numerous grounds the validity of the Utah bankruptcy court's orders, the Utah state court's Trust Judgments, and the Steppes Judgment. These challenges are improper either because they constitute impermissible collateral attacks on valid judgments, or because we lack jurisdiction to review the underlying judgments. *See* 28 U.S.C. § 1294(a)(1993) ( "Appeals from reviewable decisions of the district or territorial courts shall be taken to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for circuit embracing the district.").

*Id.* at 936 n.4 (emphasis added). Probably the most concise explanation for the reason underlying

this rule was made by the Fourth Circuit in *Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251

(4th Cir. 1997) when it reviewed a South Carolina federal court's ruling. That district court held

that it could not and would not review an order from a Florida Bankruptcy Court. The Fourth

Circuit quoted the district court's refusal to allow the collateral attack and then summed up the

rationale:

11

> If Spartan feels the Bankruptcy Court exceeded its jurisdiction or did not accord Spartan due process, then Spartan's remedy lies in Florida not in South Carolina. Spartan's action constitutes an improper collateral attack on the Sale Order issued by the United States Bankruptcy Court for the Southern District of Florida, and thus, the Sale Order may not be challenged in this forum.
>
> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Id.* at 1254–55 (citations omitted).

Just like Spartan Mills in the above-referenced case, Moore is complaining that the Bankruptcy Court violated his rights to due process, but instead of appealing to the proper court, he has filed this separate suit. As the Fourth Circuit explained, this violates firm and long standing legal principles.

### IV.
### Conclusion

This Court dismisses all claims in this case. The claim for monetary damages is dismissed with prejudice. The claims for other relief are dismissed without prejudice, and the appropriate appellate court can deal with the merits of these contentions.

Signed on this the 22nd day of July 2026.

Andrew S. Hanen
United States District Judge

12